KING, PLAINTIFF AND APPELLANT, *v.* FERNÁNDEZ ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the First District Court of San Juan in Proceedings after Judgment.

No. 3227.—Decided November 6, 1924.

ACCESSION—BUILDING ON ANOTHER'S LAND—ELECTION OF OWNER OF LAND.—In the cases referred to in section 370 of the Civil Code the owner of the land must elect between buying the building and selling the land; and in the former case he must pay to the possessor of the building the necessary expenses incurred, although the possessor may not have erected it and assuming that it was built by his predecessors. Until such election the possessor is not bound to act nor, therefore, to vacate the property; hence, in the absence of such election his possession is not in bad faith because an action of revendication may have been brought.

ON RECONSIDERATION.

ID.—ID.—ID.—The election that the owner of the land must make in the cases referred to in section 370 of the Civil Code should be categorical and unconditional in order that it may bind the possessor of the building.

The facts are stated in the opinion.

*Mr. H. G. Molina* for the appellant.

*Mr. M. M. Ginorio* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

On May 31, 1922, in the principal suit between the same parties, this court reversed the judgment of the District Court of San Juan. Our judgment revindicated the property in favor of the complainant but refused to award mesne damages. The said judgment contained a holding that the matter of damages was to be regulated by section 370 of the Civil Code.

The successful complainant having presented a motion for reconsideration in order to obtain an award of damages, this Court rendered an opinion and order overruling the motion. In this opinion we found as a fact that the bad faith of the defendants was not shown and that the house in question was bought of one who appeared in the registry as owner. The question of bad faith, therefore, was completely adjudicated in favor of the defendants, became the law of the case and so far as any claims of the complainant are now based on alleged bad faith they should be ignored. The complainant had had his day in court on that fact and even supposing that this court erred, there is a complete estoppel by our judgment.

Our judgment sent the parties to adjust their differences in accordance with section 370 of the Civil Code. That section provides as follows:

"Sec. 370. The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, by previously paying the indemnity specified in sections 455 and 456 of Chapter III, Title V, and to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent."

When the case went back the complainant solicited and obtained a rule to show cause why the defendants should not in substantial effect, first, on the giving of the bond by

the complainant, be required to quit the premises in order that the complainant might proceed to destroy the house and lay streets within the property; second, why it should not be decided that the house added no value to the property, but, on the contrary, was a detriment to the complainant; third, why the compensation to which the defendants might be entitled should not be limited to the repairs to be made on the house and not to the total value of the house; fourth, why the compensation to which the parties would be severally entitled should not be determined and offset one against the other, and, fifth, why the costs of this proceeding should not be imposed upon the defendants.

The court entertained the petition, issued a writ to show cause and, after an answer and a hearing, overruled the motion.

In his first assignment of error the complainant mentions the fact that section 370 was not made an issue in the case. It is entirely true that the defendants raised no such question, but then they had won their case in the court below and we reversed the judgment in their favor, so that the matter of fruits or damages was not immediately the concern of the defendants. However, the complainant and appellant concedes that there was a claim for damages in the original complaint and we have no doubt therefore that on the reversal this court could do what the lower court might have done, namely, consider the rights of the defendants and invoke section 370, *supra*. The subsequent development of this opinion will show, we think, that both the court below and this court were bound to take notice of section 370 once it was drawn to the attention of either court.

The principal question raised on appeal is whether defendants have a right to recover the value of the house erected on the land. The appellant says that the court overruled his motion without an opinion. The answer of defendants, however, set up clearly that the complainant has not made his election whether he will pay for the house

or cause the defendants to buy the land. From the wording of section 370 and from the various comments of Manresa it is evident that such an election must be made. For example, Manresa, in Vol. 3, p. 208, of his Commentaries on the Civil Code, says:

"And as it was necessary to give the right of election to one of the two, it was given to the owner of the land because his right was prior in date and likewise preferential under the principle of accession."

This excerpt from Manresa is taken from commentaries which show that there had been considerable doubt or perplexity as to how to draw the forerunner of section 370 of our present Civil Code.

The complainant, instead of making an election to compensate the defendants for the house, has attempted to show that he ought not to pay anything for the said house because the defendants did not build it, because their predecessors —one of whom built the house—was not an owner in good faith, and because the house has no value to the complainant. If the complainant is wrong, as we think he is, on these defenses, not having made an election to pay the defendants for the value of the house, the court below was not bound to consider the relative claims for damages or the set-offs of the complainant.

The defendants did not build the house, but one of their predecessors in title did. We have been unable to find any case involving the rights of an ostensible purchaser of a house and land where the land did not belong to the seller but the house did. Generally, under a principle of accession, the soil and everything on it belongs to the owner, but the civil law and the Civil Code has made an exception in favor of a house built in good faith by an owner, as witness section 370. That section equally, if tacitly, recognizes the right of the true owner and also of a purchaser in good faith. The right to the improvements inheres in the person who builds

it in good faith and this right he may transfer. The transfer of the whole property transferred all the rights to the vendor. To hold otherwise would give the true owner something for nothing. The mere accident that the man who built the house has passed the dominion to another ought not to endow the true owner with any right he would not otherwise have possessed. We feel bound to hold that a purchaser in good faith stands in the shoes of his seller, the ostensible owner, and may claim the value of the house from the true owner when the latter comes to claim the land. It may also be questioned whether the same matter was not implicitly decided by the judgment of this court. We were considering the rights of the defendants to the house and we grouped together all the persons who had owned the said house.

In pursuance of our idea that the complainant has not made an election to pay the value of the house we may say that he has not even elected to pay for the improvements made by the present defendants. He asked the court, on the giving of a bond by him, to order the defendants to leave the premises immediately.

We cannot interpret the decision of this court as does the complainant. We found, so far as we had a right thereto —and we think we have shown that the right existed—that the person who built the house erected it in good faith. We said:

"There is nothing in the record showing actual bad faith on the part of Quiñones, Aragunde or the defendants. Apparently they acted in good faith and all or some of them will suffer actual damages by the decision of this case. That being the case, we think that justice in this case requires the decision that the land held by the defendants belongs to the plaintiff and should be restored to him, and no more.

"Finally, there is a matter that can not be ignored by this court and that is the fact of the house standing on the lot in the possession of the defendants. The house was not built by Catlin. It was built by one who in good faith believed that he was the owner of the land

on which he was building. Therefore, the case must be governed by the provisions of section 370 of the Civil Code.''

We cannot see how these words mean anything else but that all the possessors of the house were owners in good faith. Coming then to the claim of the complainant that the house has no value to him, to us it seems very obvious that the convenience of the complainant cannot be converted into a rule of law. It is only an accident that the complainant desires to urbanize the land in question and that the house is alleged to be in the way. Ordinarily, the rule is as formulated by section 370; that the house has a value, and it is the value to the possessor of it under the ordinary measure of damages, namely, the market value. Section 370 contemplates indemnization to the man who has the right to the house. It is his state that the law is considering and not the peculiar condition of the owner of the soil. *Ad ea quae frequentius accidunt jura adaptantur.*

The complainant and appellant complains bitterly of his lack of possession of the land. We think that this lack of possession is entirely his own fault. This court definitely decided that section 370 was applicable and indicated pretty strongly, we think, that the defendants were entitled to be indemnified for the house provided the complainant decided to take the land. The complainant made no election at all and the only thing that he did was to indicate that he would perhaps pay the defendants the value of the improvements some time, but for the present he asked the court to accept a bond. The position of the complainant that the defendant was not the person who actually built the house was too restrictive and not the equitable attitude contemplated by section 370.

The complainant also argues in one of his assignments of error that the possession of the defendants was in bad faith—from the interposition of the complaint. The answer of the defendants sets up that they were not obliged to sur-

render the premises until the complainant elected to take his stand under section 370 and we are inclined to believe that this attitude of the defendants is one that is justified by the law. In other words, we have the idea that a person in possession of a premise on which he has built a house in good faith is not obliged to move therefrom until the true owner makes the election required by section 370.

Nor can we see, as maintained by the complainant and appellant, that sections 455 and 456 in any way contemplate the benefit to the owner, but all the way through, these sections, in connection with section 370, are considering the refunding to the persons who have erected the house or made other improvements, the reimbursements of the expenses to which they have been put.

The order appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.

------

ON RECONSIDERATION.

On motion for reconsideration MR. JUSTICE WOLF delivered the following opinion of the court on February 17, 1925:

Until the filing of the petition it is certain that the complainant had made no election. The complainant, of course, was concerned with recovering the title to his property and hence originally never notified the defendants of any election. We hold, as suggested or decided in our main opinion, that until such election was made the defendants were not obliged to surrender the premises. We find nothing in the commentators that convinces us that a person in possession of a house, when section 370 is applicable, is obliged, until compensation or offer of compensation is made, to move from the premises. We do not see that defendants were at all at fault until election made.

The appellant now asks that this court make a final disposition of the case and maintains that section 8, etc., of the petition sets up an election and that the court below should have decided the right of the parties under section 370. The petition described the property, recited that this court had decided the revendication in favor of complainant and that the record in the registry was null and that the case was to be regulated according to section 370 of the Civil Code. Then, after recital of sections 370, 455 and 456 of the Civil Code the petitioner set up that the defendants had not built the house. Then the petition went on to say:

"4.— . . . . Moreover, they acquired the property in bad faith since they were not ignorant of the flaw in the title or manner of acquisition. However, the house was by no means a necessary expense, but at most a useful purchase, and therefore the plaintiff may elect to pay the defendants the increase in the value of the plaintiff's property due to the building of said house.

"8.—That the said lot, which was wrongfully in possession of the defendants since the service of the complaint in this case, was and is part of a larger property belonging to the plaintiff extending from McLeary Street on the south to the Maritime Zone on the north. That the said property is situated in a section of the city of San Juan that is being urbanized by the continuous construction of innumerable houses on the many lots into which it was partitioned by the plaintiff."

Afterwards, in paragraphs 6 and 7, the petitioner insisted that from the time of the interposition of the complaint the defendants lost their attribute of possessors in good faith and were in possession in bad faith and ought to pay the rents and fruits. The petition made a calculation of these rents and fruits at $56 for the rent of the house and lot. So that petitioner denied the defendants any rights to compensation; in spite of the holding of this court in King v. Fernández, 30 P.R.R. 550, denied their good faith and especially insisted that their possession was in bad faith from the filing of the complaint (matters considered in our main opinion).

The petition did not accept the status which this court had declared was existing. Under section 370 defendants were not bound to leave the premises until the election was actually notified to them. So that their possession after the filing of the complaint was not a holding in bad faith, especially as under said section 370 a defendant who has built is bound to buy the land if the owner so elects.

The rest of the petition is as follows:

"8.—If this court should decide, notwithstanding the foregoing facts, that the plaintiff is in duty bound to pay the defendants something for the said house instead of compelling the latter to remove the same from the property of the plaintiff, and the plaintiff, reserving an exception to the ruling, then decides to pay the amount expended by the defendants in the construction or purchase of said house, deducting therefrom the sum that the defendants are called upon to indemnify the plaintiff for profits derived from the property from the date of service of the complaint herein.

"9.—That the defendants acquired said house and lot on January 26, 1917, for the sum of $1,800, the plaintiff alleging that $800 of the said outlay by defendants was for account of the house which was and is a frame building of poor or cheap construction; and the defendant himself, Pedro Bolívar, on June 8, 1917, stated under oath in the Treasury Department that said house was not worth more than $720, which is the amount at which it was assessed for the fiscal years 1918–19, 1919–20, 1920–21 and 1921–22.

"10.—That from the date of the service of the complaint herein, that is,—from July 16, 1918, the defendants no longer retained their character of possessors in good faith and from that date have held the said house and lot in bad faith and are therefore compelled to turn over to the plaintiff the natural or civil fruits or revenues derived by them from the said property and such as the lawful possessor would have acquired. And the plaintiff alleges upon information and belief, based upon the statement of defendant Bolívar himself before this court, that the defendants were paid $56 monthly for the rent of the house and lot and that they received or might have received from July, 1918, to date, as revenue from said property, the aggregate amount of $2,968.

"11.—That the defendants, notwithstanding the aforesaid judgment of the Supreme Court holding that the plaintiff was the owner of said lot and that the defendants must therefore vacate it, have

continued in possession thereof and, according to plaintiff's information and belief, have rented it and therefore the plaintiff finds himself in the same position at this time as on July 18, 1918, when he filed his complaint in this action, notwithstanding that the Supreme Court has decided that he is the owner of the said lot, that the title of the defendants is null and should be cancelled in the registry of property.

"For the foregoing reasons the plaintiff hereby prays the court:

"1.—Subject to the furnishing of bond by plaintiff to answer to the defendants in any sum he might be required to pay them for the amount employed in the building or purchase of the said house, to direct the defendants immediately to vacate the same as well as the lot of the plaintiff so that the latter may enter upon his property for the purpose of demolishing the house and finish laying the said streets.

"2.—To hold that the erection of the said house on the land of the plaintiff has in no way increased its value, but, on the contrary, has lessened it, and that therefore, under sections 370 and 455 of the Civil Code, the defendants are not entitled to any compensation whatever by the plaintiff, but may nevertheless remove their house (reserving an exception to the ruling of the court to the contrary); and the plaintiff then prays the court:

"3.—To fix the amount of the outlay by the defendants in the purchase of the said house, as well as the amount of the profits received by them or that the plaintiff might have received from the date of the service of the complaint in this case, and after setting one amount against the other, to direct the debtor to pay the resulting balance to the other party, and

"4.—To mulct the defendants with the costs of this proceeding, including attorney fees, and also to make any other pronouncement that may be just and proper in keeping with the circumstances of this case."

In section 8 of the petition the election, if any, was only to be considered if the court should decide the other contentions of complainant against him. In other words, the election was conditional upon the decision by the court below and in the same paragraph the complainant claimed an offset by reason of fruits and rents from the interposition of the complaint. The complainant, despite the holding of this court in the case of *King* v. *Fernández, supra,* was insisting that

the defendant had not built the house and that their possession in any event was in bad faith. So that defendants, even if they were disposed to accept the election without further questions thereto, could not do so without further litigating the question already decided by this court. If the complainant under the state of the law as decided by us wanted his property, he should have made in his petition such an offer or tender to defendants that they would have been bound to accept.

While petitioner does ask the court to give any relief that might be equitable and does discuss the manner of arriving at the value of the house, it is in a limited way and only after the defendants would have been bound to fight their battles all over again.

Perhaps if complainant had accepted the theory of this court as to the good faith of the defendants and had not insisted too strongly on the bad faith of defendants from the interposition of the complaint, the court below would have been in a position to determine the other matters, but the petition and the rule to show cause called upon the defendant to further litigate questions already decided or involving their good faith. It should always be remembered that the owner of a piece of property has some duty to be vigilant and to prevent the rise of an outstanding claim and should try to prevent another from building on the land.

Under these circumstances we do not see that either the defendants or the court was bound to act and hence that burden should not be placed upon this court for the first time.

In view of all the foregoing, it simply devolves on the plaintiff—in the district court, of course—definitely to elect to pay the price of the house at its present market value or else require the defendant to pay him the actual price of the lot. We are inclined to believe, after consideration, that we were mistaken in saying, *obiter,* in our opinion of November 6, 1924, that defendant could recover the market value of the

house. What the defendants could recover is stated in sections 455 and 456 of the Civil Code, provided the same does not exceed the actual market value. If the parties can not reach an understanding in the fixing of the price it will be the duty of the district court to adjust the conflict according to the evidence that may be submitted by the parties.

The reconsideration is

*Denied.*

Chief Justice Del Toro and Justices Aldrey and Franco Soto concurred.

Mr. Justice Hutchison concurred in the result.